**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **TWENTY-FIRST CENTURY** | § | |
| **TECHNOLOGIES, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 1:16-cv-00016** |
| | § | |
| **CHICONY ELECTRONICS** | § | |
| **CO., LTD.** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

1.      Plaintiff Twenty-First Century Technologies, Inc., (hereinafter "Plaintiff" or "Twenty-First Century") files this Original Complaint and Jury Demand against Chicony Electronics Co., Ltd. and asserts the following:

## I.      PARTIES

2.      Plaintiff Twenty-First Century Technologies, Inc., is a Delaware for-profit corporation having its principal place of business in Travis County, Texas.

3.      Defendant Chicony Electronics Co., Ltd., ("Chicony") is a Taiwan for-profit corporation having its principal place of business at No. 25, Wu-Gong 6th Road, Wu-Ku Industrial Park, Taipei Hsein, Taiwan. Chicony may be served using any form of mail that the clerk addresses and sends and that requires a signed receipt. *See* Fed. R. Civ. P. 4(f)(2)(C)(ii).

## II.      JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1332.

5.      This Court has personal jurisdiction over Chicony because, *inter alia*, it regularly does business in this judicial district, has established minimum contacts with the forum, and the

Court's exercise of jurisdiction over Chicony will not offend traditional notions of fair play and substantial justice.

6.      Chicony has breached its obligations under a non-use and non-disclosure agreement with Plaintiff and has breached the relationship of trust and confidence with Plaintiff, as well as its duties under Texas common law, as set forth herein, by placing or having its assigns place into the stream of commerce products with the reasonable expectation and/or knowledge that the actual or potential ultimate purchasers and users are located throughout the United States, including within this judicial district.

7.      On information and belief, Chicony or its assigns voluntarily conducted sales and solicited customers, and continues such acts, in the state of Texas, including in this judicial district.  Chicony or its assigns sells, advertises, markets, and distributes throughout this judicial district products which it has manufactured in violation of its obligations under a non-use and non-disclosure agreement with Plaintiff and in breach of Texas statutory and common law.

8.      The Court may properly exercise personal jurisdiction over Chicony, and venue is likewise appropriate, because Chicony contractually consented to personal jurisdiction of Texas Federal District Courts and to this venue in its agreement with Plaintiff.

9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because Chicony is subject to personal jurisdiction in the Western District of Texas.

10.      Plaintiff Twenty-First Century Technologies, Inc. is based in Austin, Texas.

11.      Plaintiff Twenty-First Century Technologies, Inc. owns keyboard and keypad technology, including patented inventions conceived and developed by two inventors, David Byrd and Andrew Katrinecz, who founded Plaintiff Twenty-First Century Technologies, Inc. over fifteen years ago.  Mr. Byrd resides in Austin, Texas.

12.     In 2000, Twenty-First Century and Chicony entered in to a non-use and non-disclosure agreement ("Non-Use/NDA") so they could discuss in detail Plaintiff's backlit keyboard and computer-mouse technology.

13.     The Non-Use/NDA provided that Texas law would govern and that the federal and state courts of Texas would be the exclusive forums for any disputes between Twenty-First Century, then a start-up technology company, and Chicony, which was already an established keyboard and computer peripheral manufacturer in China.

14.     By the terms of the Non-Use/NDA, Chicony expressly consented to personal jurisdiction in the federal and state courts of Texas, as set forth below:

> 11.    Disputes.   This agreement shall be governed and interpreted in accordance with the laws of the State of Texas, exclusive of its choice of law rules, and where applicable, the laws of the United States of America.   In any litigation arising out of this Agreement, the prevailing party will be entitled to recover all reasonable expenses of litigation and appeal (including without limitation attorneys' fees), in addition to any other remedy to which the prevailing party is entitled.   Any action brought in connection with this Agreement shall be brought exclusively in the federal and state courts in the State of Texas, USA, and each party hereby consents to personal jurisdiction over it by such courts.

15.     The Non-Use/NDA has remained in effect continuously since inception and is still in effect today.

16.     Prior to and subsequent to signing the Non-Use/NDA, Defendant Chicony made false and misleading statements to Plaintiff, in email and/or during telephone conferences, with at least one representative of Plaintiff receiving such statements while the representative was in either Austin or Round Rock, Texas, including but not limited to the following representations:

(a) **Misrepresentations Regarding Non-use of Plaintiff's Invention and Product.**
Before and after Plaintiff first contacted Chicony (in 2000) to explore a strategic business partnership pertaining to Plaintiff's keyboard technology, inventions, and products, Plaintiff sought assurance from Chicony that its product and associated rights would not be taken or used, in whole or in part.  Plaintiff required an executed non-use and non-disclosure agreement in place prior to disclosing specific facts pertaining to its technology, inventions, and products.  The parties signed their non-use and non-disclosure agreement in 2000.   Chicony provided assurances before and after signing the Non-Use/NDA that it would respect and not use Plaintiff's product, inventions, or intellectual property without Plaintiff's consent.  In doing so, Chicony stressed its trustworthiness by touting its considerable size, its experience in manufacturing keyboards for major industry players without problems, the fact that Plaintiff was dealing with one or more members of senior management of Chicony, its long history of successfully dealing with inventors and companies with which it collaborated, its dominance in many markets and its manufacturing capacity.

(b) **Misrepresentations Made As Part of the Partnership Discussions.**  Because the parties were pursuing a partnership or other collaboration, Chicony represented that Plaintiff's disclosure of details about their product, technology, and inventions would be protected and not be taken or used by Chicony, in whole or in part, without Plaintiff's consent.   Chicony represented to Plaintiff that a requirement for any partnership or other collaboration would be Plaintiff's disclosure of its inventions and products under development, but assured Plaintiff that any such disclosure would be respected by Chicony under an agreement containing non-use and non-disclosure prohibitions.

**(c) Misrepresentations Regarding Chicony Using Plaintiff's Product and Associated Technology When Chicony Became "Ready" to Enter Electroluminescent Backlit Keyboard Markets.**  Plaintiff disclosed from this judicial district details pertaining to its product and inventions including: details of the product's functionality and operation; its cost structure and bill of material; a prototype that Chicony somehow "lost" and could never return; examples of commercialized versions of Plaintiff's product; and names of Plaintiff's licensees, details pertaining to its business plan and leads on distributors.  After Twenty-First Century disclosed substantial, sensitive business and technical information to Chicony under the Non-Use/NDA, Chicony suddenly indicated that it was not "ready" to incorporate Plaintiff's product and technology into its business, but would collaborate with Plaintiff when it was ready.  Chicony subsequently became "ready" and incorporated, unilaterally and without Plaintiff's consent, Twenty-First Century's product, technology, and inventions into computer keyboards on a massive scale.

17.     On information and belief, Chicony supplied backlit keyboards using Plaintiff's technology to one of the largest computer companies in the world, Acer.  Yet, Chicony never disclosed to Plaintiff that it was "ready" to incorporate Plaintiff's product and, in fact, was doing so on a worldwide basis for Acer.

18.     The foregoing representations by Chicony were communicated by phone or email to Plaintiff in either Austin or Round Rock, Texas.  Further, all of the foregoing representations were relied upon by Plaintiff in Austin or Round Rock, Texas.  Plaintiff has suffered damage in this judicial district, in Austin or Round Rock, Texas, as a result of Chicony's misrepresentations, as well as its other illegal actions described herein.

### III.    CONDITIONS PRECEDENT

19.    All conditions precedent to Plaintiff's right to recovery have been performed, occurred, or been waived.

### IV.    FACTS

20.    In the late 1990s, Plaintiff's co-founders Andrew Katrinecz and David Byrd, invented a computer keyboard operable in dark and low light environments.  Katrinecz and Byrd produced several functioning prototypes of their invention.

21.    Katrinecz and Byrd assigned to Plaintiff all technology, inventions, and rights pertaining to their keyboard and mouse products.

22.    Thereafter, Katrinecz and Byrd continued to refine and further develop their invention and, through Plaintiff, began to commercialize it.  Plaintiff expended considerable time and effort in creating a strategy for producing, marketing, and licensing the inventions. These efforts to commercialize their inventions included conducting market research, developing a list of interested distributors, analyzing various designs, developing plans for strategically marketing their invention to particular niche markets, developing lists of potential customers to target in those niche markets, researching vendors, researching products, researching colors to use to manufacture their invention, researching and analyzing possible licensees, and developing sales and cost projections, including bills of materials.

23.    In 1999 and 2000, Plaintiff began to contact various manufacturers to discuss potential business relationships to mutually profit from the sale of Plaintiff's backlit keyboards. Plaintiff required companies that it approached to execute an agreement before disclosing valuable information concerning the invention and plans for commercializing the invention.

24.    One of the companies contacted in 2000 by Plaintiff was Chicony.

25.     In 2000, Chicony was a worldwide leader in the manufacture and distribution of keyboards.

26.     Prior to Plaintiff's contact in 2000, Chicony had never sold an electroluminescent backlit keyboard.

27.     On information and belief, at no time prior to Plaintiff's first contact with Chicony in 2000 had Chicony sold an illuminated keyboard model.

28.     Plaintiff first contacted Chicony in 2000 to explore a strategic business partnership.

29.     As part of its initial discussions with Chicony, Plaintiff told Chicony it had a keyboard invention and products that would operate in a dark or low-lit environment and would be low-cost to implement even in existing keyboard designs (i.e., as a retrofit).

30.     Plaintiff told Chicony that Plaintiff required an executed confidentiality agreement, the Non-Use/NDA, in place prior to disclosing additional details of its product and to enable discussions about a potential partnership.

31.     In 2000, prior to the execution of the Non-Use/NDA on December 21, 2000, Chicony representatives, namely Hank Fu, Martha Chang, and a Mr. Roger Lu, spoke with Byrd and Katrinecz by telephone on approximately 10 occasions.

32.     During the initial discussions with Chicony Byrd and Katrinecz generally described that they had unique idea which was low-cost and which Chicony might be interested in licensing or manufacturing.  Chicony, through its representatives, expressed interest and asked for more details.  Plaintiff agreed to provide details only after the parties entered a non-use and non-disclosure agreement.

33.     In the teleconferences prior to the execution of the Non-Use/NDA, Chicony, through its representatives, including Mr. Fu, Ms. Chang, and Mr. Lu, represented to Katrinecz and Byrd that for Chicony to do business with Twenty-First Century (a threshold requirement for any partnership or collaboration), Chicony needed disclosure of Plaintiff's invention and associated information and would respect the terms of an non-use and non-disclosure agreement and not use Plaintiff's product, invention, and intellectual property without Plaintiff's consent.

34.     During these initial communications with Plaintiff and prior to signing the Non-Use/NDA in 2000, Chicony touted its size and dominance in the industry, its experience in manufacturing keyboards for major industry players, its long history of trustworthiness in dealing with inventors and companies it had collaborated with, its standing in Asian markets, and its manufacturing capacity.

35.     In its communications with Plaintiff, Chicony expressed interest in partnering or otherwise collaborating with Plaintiff, whether through entering into a manufacturing relationship for Plaintiff or its licensees, through a licensing arrangement, through manufacturing backlit keyboards for private-label clients, or through some other means and close relationship.

36.     Chicony executed the Non-Use/NDA on December 21, 2000.

37.     The Non-Use/NDA has remained in effect continuously since it was executed and is still in effect today.

38.     The Non-Use/NDA stated at the outset that the parties were entering into the agreement in order to explore a business opportunity; it provided as follows:

Twenty-First Century Technologies, Inc., a Delaware corporation (hereinafter "TWENTY-FIRST"), having a principal place of business at 33 Caryville Crossing,, Bellingham, MA 02019, and Chicony Electronics Co. Ltd., a Taiwan corporation (hereinafter "CHICONY"), having a principal place of business at No. 25, Wu-Gong 6th Road, Wu-Ku Industrial Park, Taipei Hsien, Taiwan R.O.C., are entering, on a nonexclusive basis, into discussions concerning the business relationship described in Attachment A (the "Business Opportunities"). In connection with these discussions, TWENTY-FIRST may disclose certain confidential information to CHICONY to be used solely to evaluate the Business Opportunities and CHICONY may disclose certain confidential information to TWENTY-FIRST to be used solely to evaluate the Business Opportunities. In order to protect each party's proprietary rights in its

39.     Attachment A to the Confidentiality Agreement set forth the business opportunity being explored by Plaintiff and Defendant in broad terms and referenced discussions concerning "1. Methods and designs for manufacture of computer keyboards.  2. Illuminated keyboard design and apparatus."

40.     The business and product lines of Plaintiff and Chicony were disclosed on the page of the Non-Use/NDA that addressed the business opportunities being explored by these two parties:

TWENTY-FIRST CENTURY TECHNOLOGIES, INC. and_____

have entered into discussions concerning the following:

1.     Methods and designs for manufacture of computer keyboards.

2.     Illuminated keyboard design and apparatus.

TWENTY-FIRST TECHNOLOGIES, INC. is engaged in the business of designing, developing, fabricating and selling computer keyboards and designing and developing illuminated keyboard methods and apparatus.

CHICONY is engaged in the business of manufacturing computer peripherals including keyboards.

41.     The Non-Use/NDA established a relationship of confidence and trust between Plaintiff and Chicony and provided broad non-disclosure and non-use prohibitions, including the following that protected a disclosing party such as Plaintiff:

(a)     "'**Confidential Information**' means all . . . information of [Plaintiff] in any form . . . that is obtained during the course of the discussions, including . . . technical know-how . . . methods and procedures of operations, financial information, and all other information relating to . . . development . . . manufacturing, purchasing . . . [and] engineering . . . .";

(b)     The Non-Use/NDA had a specific paragraph entitled "Nonuse" that provided for broad prohibitions against not only Chicony's use of any Confidential Information, but also prohibited Chicony from making any use of Plaintiff's *product*:

4.   <u>Nonuse</u>.  Each party agrees to not copy or otherwise reproduce, reverse engineer, summarize, compile, quote or make any commercial use of Confidential Information disclosed by the other party or copy or attempt to reverse engineer or make any commercial use of any product of the disclosing party without the written consent of the disclosing party, and any such permitted copy shall be marked to indicate that the information is subject to the restrictions of this Agreement.   Each party may use the other party's Confidential Information only as necessary to evaluate the Business Opportunity.

The Non-Use/NDA also obligated Chicony to protect Plaintiff's Confidential and proprietary information from loss:

5.   <u>Protection of Confidentiality</u>.  Each party shall use reasonable care, and not less than the same care it exercises with respect to its own confidential and proprietary information, to protect the other party's Confidential Information against unauthorized use, loss, theft or disclosure.  Each party shall restrict access to the other party's Confidential Information to its

(c)   Chicony agreed the damage for violating the Non-Use/NDA was irreparable:

7.   <u>Acknowledgment of Irreparable Harm</u>.  Each party acknowledges that the other party's Confidential Information contains trade secrets and other proprietary information and that any disclosure or use of the disclosing party's Confidential Information, other than as expressly permitted herein, will cause irreparable harm to the disclosing party.  Each party therefore agrees to the entry of temporary, preliminary and permanent injunctions by any court of competent jurisdiction to prevent breach, or to compel performance, or this Agreement.  This remedy is in addition to any other remedy available to the disclosing party.

(d)   Chicony agreed to return Plaintiff's information:

6.  <u>Return of Confidential Information</u>.  At the conclusion of the discussions, or at any time requested by the disclosing party, the other party will promptly return to the disclosing party all Confidential Information, in whatever form, including copies, summaries or compilations of the Confidential Information.  Any signatory to Attachment B shall also return all Confidential Information to the party from whom it received any such Confidential Information at the conclusion of such discussions.

(e)  Chicony agreed that the Non-Use/NDA conferred no rights in Plaintiff's technology:

8.  <u>No Rights Conferred</u>.  Each party agrees that this Agreement does not give it any rights, either now or in the future, in any trade secrets or other proprietary rights of the other party.  No license, express or implied, in the Confidential Information is granted to either party other than to use the information in the manner and extent authorized by this Agreement.  No indemnification for damages of any kind, sustained by either party, by reason of the disclosure or use of the Confidential Information is granted or implied.

42.     Chicony agreed to the non-disclosure and non-use obligations in 2000 through execution of the agreement by Chicony Sales Manager Martha Chang on December 21, 2000.

43.     Ms. Chang, Mr. Lu, and Mr. Fu, at all relevant times throughout their dealing with Plaintiff had actual or apparent authority to conduct business, speak, and act on behalf of Chicony.  In fact, Chicony represented to Plaintiff that Plaintiff was dealing with at least one member of senior management at Chicony.

44.     In the spring of 2001, Chicony continued to represent to Katrinecz and Byrd that Plaintiff's disclosures made under the Non-Use/NDA would be protected and not used.

45.     Thereafter, Plaintiff disclosed to Chicony valuable confidential information about its inventions, product lines, technology, and business plans.  The information Plaintiff disclosed included details concerning its products under development and additional information as they

were scheduled for commercialization, a prototype, information about proposed bills of materials and compiled parts lists and vendors, its research regarding vendors, materials, and colors, sales projections, its marketing strategy, plans to target niche markets and the specific markets it would be targeting, its electrical designs, examples of marketing material for commercialized versions of Plaintiff's product, its licensees, potential customers and markets, and interested distributors.

46.     Also after execution of the Non-Use/NDA and to further a potential strategic partnership between the two companies, Plaintiff provided Chicony with a prototype keyboard that disclosed and embodied structural characteristics of Plaintiff's product line under development at the time, confidential technological advances, and inventive components associated with Plaintiff's products that had never been publicly disclosed.

47.     In the course of its discussions and communications with Chicony, Plaintiff also disclosed technical know-how, disclosed methods and procedures relating to the development and manufacture of the keyboards, the keyboards' component specifications, and supplier information ascertainable from the prototype.

48.     In late July 2001, Plaintiff requested that Chicony return the prototype keyboard as required upon request under the terms of the Non-Use/NDA.

49.     Chicony representative Hank Fu replied to Katrinecz and Byrd in August 2001, "I have very embarrassing news, I received a call from RD that they are still not able to locate the sample that you have loaned us. We are still trying to locate the keyboard."

50.     Chicony never returned the prototype keyboard to Plaintiff.

51.     Chicony never provided any explanation as to how the prototype keyboard has been "lost."

52.    Around the time Chicony "lost" Plaintiff's valuable prototype, Chicony told Plaintiff that it was not ready to partner with Plaintiff *at that time* but in the same breath described Plaintiff's technology as having "great value." Mr. Fu wrote to Katrinecz and Byrd on August 31, 2001: "I talked to Taiwan we are not ready to take on your technology;" and added, "I regret that our management and technology team did not see the great value that your technology would offer."

53.    Nevertheless, even while Chicony declined to immediately enter into a strategic partnership with Plaintiff, joint efforts between the parties continued to advance their anticipated partnership, including Chicony offering to manufacture products for use with Plaintiff's licensees, Plaintiff introducing Chicony to potential customers, Chicony and Plaintiff discussing joint sales calls and coordinating the marketing of Plaintiff's products, and Chicony promising to collaborate with Plaintiff when the demand warranted Chicony's entrance into the backlit keyboard product space.

54.    In another teleconference in 2001, Fu advised Katrinecz and Byrd that Chicony would commercialize the collaboration with Plaintiff when the market for backlit keyboards had sufficiently strong demand.

55.    Fu further represented in an email sent to Byrd and Katrinecz on November 21, 2001, that Chicony's gaming prototype was not "ready" but that it would collaborate with Plaintiff when it was ready for a backlit version of a gaming keyboard product.

56.    In the Spring of 2002, Mr. Fu expressed in a teleconference that Chicony was willing to manufacture sample products for Plaintiff's licensee and agreed to participate in a May 2002 teleconference with Plaintiff and its licensee to discuss its manufacture of sample products.

57.     Although the teleconference did not take place, Mr. Fu continued to express interest in a business relationship, including during a telephone discussion with Katrinecz on September 5, 2002, when he informed Katrinecz that he would be interested in jointly pitching Plaintiff's keyboards and Chicony's capabilities, an arrangement Katrinecz then confirmed in an email to Mr. Fu that same day:

Date: 9/5/2002 11:09:14 AM Eastern Daylight Time
To: hank_fu@chicony.com
Subject: Nite-Surfer Pictures
Attachment: SaffireKB Pic.ZIP

Hank,

Nice to speak with you again.  I will take you up on the joint sales call opportunity.
I will try and arrange for next week.

Attached are a couple of photos of the Nite-Surfer.

Have a safe trip next week.

Andy

58.     In turn, Plaintiff believed that Chicony was still interested in a potential business partnership and that the prototype it had given Chicony had simply been lost as Chicony claimed.

59.     Mr. Fu further encouraged Plaintiff to trust Chicony and convinced Plaintiff of the sincerity of Chicony's interest in a potential partnership.  Mr. Fu engendered Plaintiff's trust by providing Plaintiff with his personal contact information, discussing personal matters such as family and careers with Katrinecz, and emphasizing that Chicony employees tended to stay long-term because Chicony was a good company that took care of others, including its employees and those on the outside with whom Chicony collaborated.

60.     In 2004, Chicony continued to express interest in collaborating with Plaintiff whereby it would manufacture and/or enter into a licensing or other arrangement for use of Plaintiff's product associated rights.  Chicony continued to convey to Plaintiff that Chicony was

still considering a strategic business relationship with Plaintiff and that, it would do so with Plaintiff if Chicony did enter the backlit keyboard market as the parties had previously discussed.

61.     In the spring of 2004, both Katrinecz and Byrd spoke with Mr. Fu by telephone to discuss the status of their potential strategic business relationship, and Chicony continued to convey that it had a sincere interest in forming a partnership.  These discussions prompted Byrd to email Mr. Fu additional information about Plaintiff's intellectual property for Fu's review, to which Fu replied an email dated June 18, 2004 that "this is IP information my engineers like to review and get back to me hopefully by Monday to tell me if our RD is willing to support it."

62.     Chicony thus continued to represent that the only thing preventing the commercialization of the relationship with Plaintiff was whether Chicony was "ready" to enter the backlit keyboard space as previously discussed.

63.     In 2005-2006, Katrinecz and Byrd left voicemails for Mr. Fu to follow up and continue to gauge Chicony's interest, but he did not return their calls.  Thereafter, Chicony stopped communicating with Plaintiff with the exception of a LinkedIn message Mr. Fu sent to Byrd on February 11, 2011, regarding a sales manager position opening at Chicony America, Inc.

64.     At no time did Chicony disclose to Plaintiff that it had decided to work with others to manufacture backlit keyboards in competition with Plaintiff, or that it was, in fact, manufacturing backlit keyboards in violation of its obligations under the Non-Use/NDA and in competition with Plaintiff and its licensees.

65.     Upon information and belief, Chicony has entered into valuable contracts with other companies, including laptop manufacturers, to supply backlit computer keyboards, and such backlit keyboards include electroluminescent backlit keyboards.

66.     Chicony has supplied and continues to supply the backlit keyboard for Acer's Aspire S7 notebook computer.

67.     Chicony's supply of backlit keyboards for notebook computers, including the Acer Aspire S7, uses Plaintiff's technology and product in violation of the Non-User/NDA as well as the many representations Chicony made to Plaintiffs that it would not do so.

68.     The keyboard on the Acer Aspire S7 notebook computer is an electroluminescent backlit keyboard.

69.     The prototype keyboard that Plaintiff provided Chicony was an electroluminescent backlit keyboard.

70.     On information and belief, Chicony supplied the electroluminescent backlit keyboard for the Acer Aspire S7 in 2012.

71.     On information and belief, Chicony supplied the electroluminescent backlit keyboard for the Acer Aspire S7 in 2013.

72.     On information and belief, Chicony supplied the electroluminescent backlit keyboard for the Acer Aspire S7 in 2014.

73.     On information and belief, Chicony supplied the electroluminescent backlit keyboard for the Acer Aspire S7 in 2015.

74.     On information and belief, Chicony has supplied the electroluminescent backlit keyboard for the Acer Aspire S7 in 2016.

75.     Chicony never disclosed to Plaintiff at any time that it was supplying Acer with an electroluminescent backlit keyboard.

76.     Chicony has never disclosed to Plaintiff that it was selling to any third party an electroluminescent backlit keyboard.

77.     Plaintiff has never consented to Chicony selling to any third party an electroluminescent backlit keyboard.

78.     Plaintiff discovered evidence of Chicony's manufacture and sale of electroluminescent backlit keyboards in 2015.

79.     Plaintiff's examination of the backlit computer keyboards supplied by Chicony made Plaintiff aware of evidence, for the first time, that Chicony had made use of Plaintiff's product and its underlying invention in violation of its non-use obligations and also in contradiction and breach of Chicony's many representations and legal duties.

80.     On information and belief, Chicony's manufacture and distribution of backlit keyboards has been aided by its knowledge of Plaintiff's business and marketing strategies, its possession of Plaintiff's prototype keyboard, and its receipt of other information provided by Plaintiff to further a potential business partnership, which sensitive and valuable information Plaintiff disclosed on the condition that such information would not be used other than to further Plaintiff's and Chicony's mutual interests.

## V.      TOLLING

81.     To the extent necessary, Plaintiff pleads tolling and statute of limitations defenses, including the discovery rule, the continuing torts doctrine, estoppel, and/or fraudulent concealment.

## VI.     CAUSES OF ACTION

82.     The following causes of action are pleaded in the alternative if and to the extent of any conflict.   The foregoing factual allegations are hereby incorporated into each of the following causes of action.

## A.  BREACH OF CONTRACT

83.     Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

84.     The Non-Use/NDA constitutes a valid, enforceable contract between Plaintiff and Chicony.

85.     The Non-Use/NDA was signed in 2000, has been in effect continuously since 2000 and remains in effect to this day.

86.     Chicony is liable under the Non-Use/NDA.

87.     Plaintiff performed under the contract and was a disclosing party under the Non-Use/NDA.

88.     In a paragraph entitled "Non-Use" in the Non-Use/NDA, Chicony agreed not to "copy or attempt to copy or reverse engineer or make any commercial use of any product of [Plaintiff] without the written consent of [Plaintiff] . . . ."

89.     Chicony breached the Non-Use/NDA by making commercial use of and/or copying Plaintiff's product without Plaintiff's consent.

90.     Plaintiff has been injured by Chicony's breach of the contract.

91.     Plaintiff pleads for all legal relief available, including but not limited to economic damages in the highest amount supportable under Texas law, whether as an expectation interest, a reliance interest, a restitution interest, or some combination thereof.

92.     Plaintiff pleads for all equitable relief available, which is also expressly provided for under the Non-Use/NDA, including but not limited to injunctive relief prohibiting Chicony from making any further commercial use of Plaintiff's products.

93.     Plaintiff further pleads for court costs and attorney fees.

## B.  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

94.      Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

95.      In the Non-Use/NDA, the parties agreed Texas law, which includes the Texas Deceptive Trade Practices Act ("DTPA"), would apply.

96.      Plaintiff is a consumer who sought to acquire by purchase or lease goods or services from Chicony. Plaintiff sought the services of a manufacturer through a business arrangement with Chicony, as well as manufactured keyboards.

97.      Through a business arrangement with Chicony, Plaintiff sought distribution, marketing and product introduction and placement services.

98.      Chicony was the producing cause of economic damages to Plaintiff from its use or employment of false, misleading, and deceptive acts or practices, including:

a.      Chicony's assurances that Plaintiff's disclosure of its product and details of its business plan surrounding its product line would not lead to Chicony competing, rather than collaborating with, Plaintiff in the same product market.

b.      Chicony's representations to Plaintiff that a requirement for any partnership or collaboration would be Plaintiff's disclosure of its invention and products under development, while at the same time assuring Plaintiffs that such disclosure would be respected by Chicony and would not lead to Chicony using such disclosure without Plaintiff's consent and collaboration.

c.      As Plaintiff disclosed its products and extensive details concerning its product, Chicony assured Plaintiff that it (Chicony) would not enter the electroluminescent backlit keyboard market without Plaintiff's collaboration and inclusion.

d.      After Plaintiff disclosed to Chicony details pertaining to its product, technology, and inventions, a prototype Chicony "lost" and could never return, examples of commercialized versions of Plaintiff's product, names of Plaintiff's licensees, details pertaining to Plaintiff's business plan and leads on distributors, Chicony indicated that it was not "ready" to incorporate Plaintiff's product and technology into its business, but would collaborate with Plaintiff when it did become ready.   Subsequently, Chicony became "ready" and incorporated Plaintiff's product into computers on a massive scale, including for one of the largest computer companies in the world, Acer; yet, Chicony never disclosed to Plaintiff that was "ready" to incorporate Plaintiff's product and, in fact, was doing so on a worldwide basis for Acer.

e.      Its failure to disclose that it claimed the right to manufacture, sell or otherwise make commercial use of electroluminescent keyboards with similar critical features to Plaintiff's product and compete with Plaintiff in the same product market that had been the subject of Plaintiff's extensive disclosures to Chicony.

f.      Chicony's false, misleading, and deceptive acts or practices constitute statutory deceptive practices as specified by Section 17.46(b)(5), (7), (12), and (24) of the Texas Business and Commerce Code, including but not limited to:

- o   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

- o   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

o      Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

99.    Plaintiff relied on these representations to its detriment, including by providing Chicony with critical information concerning Plaintiff's products and business plan, as well as a prototype of Plaintiff's product, which Chicony somehow lost and could never return. As a result, Chicony obtained for its exclusive commercial advantage the blueprint for a product that had enormous commercial value, which was a headstart at the very least in a product space that Chicony went on to solely commercially exploit, without any inclusion of Plaintiff.

100.    In addition, Chicony was the producing cause of economic damages to Plaintiff from its unconscionable action or course of action by taking advantage of Plaintiff's lack of knowledge or to a grossly unfair degree. Chicony misled Plaintiff into believing that it was interested in a partnership or other collaboration with Plaintiff. Plaintiff did not know, due to Chicony's deception, that Plaintiff was providing a prototype of its product and extensive information regarding the anticipated and targeted commercialization of Plaintiff's product to an adversary, rather than to a partner or to someone who was interested in advancing the parties' mutual interests, as Chicony had represented to Plaintiff.

101.    Chicony's conduct was committed knowingly or intentionally.

102.    Plaintiff pleads for all legal relief available, including but not limited to:

o    Economic damages in the form of Plaintiff's lost profits and other lost economic benefits caused by Chicony's violations of the DTPA described herein;

o    Disgorgement by, and restitution from, Chicony of all economic benefits and profits enjoyed by it as a result of engaging in the violations of the DTPA described herein; and

o    Three times the amount of economic damages produced by Chicony's violations of the DTPA described herein.

### C.  FRAUD, CONSTRUCTIVE FRAUD and FRAUD BY NON-DISCLOSURE

103.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

104.    For a period of many years, Defendant communicated to Plaintiff that it was interested in a partnership or similar strategic business relationship. Plaintiff disclosed to Defendant a prototype of its product and underlying invention, details concerning Plaintiff's business plan, names of Plaintiff's actual and targeted licensees, distributors and customers. Both Plaintiff and Defendant agreed to a worldwide, confidentiality agreement that contained broad nondisclosure and non-use obligations. A confidential or fiduciary relationship existed between Plaintiff and defendant.

105.    Chicony made the following material representations to Defendant, on which Plaintiff relied.

106.    Chicony assured Plaintiff that disclosure of its product and details of its business plan surrounding its product line would not lead to Chicony competing, rather than collaborating with, Plaintiff in the same product market.

107.    Chicony represented to Plaintiff that a requirement for any partnership or collaboration would be Plaintiff's disclosure of its invention and products under development, while at the same time assuring Plaintiffs that such disclosure would be respected by Chicony and would not lead to Chicony using such disclosure without Plaintiff's consent and collaboration.

108.    As Plaintiff disclosed its products and extensive details concerning its product, Chicony assured Plaintiff that it (Chicony) would not enter the electroluminescent backlit keyboard market without Plaintiff's collaboration and inclusion.

109.    After Plaintiff disclosed to Chicony details pertaining to its product and invention--including details of the product's functionality and operation, its cost structure and bill of material, a prototype that Chicony "lost" and could never return, examples of commercialized versions of Plaintiff's  product, names of Plaintiff's licensees, details pertaining to Plaintiff's business plan and leads on distributors-- Chicony indicated that it was not "ready" to incorporate Plaintiff's product and technology into its business, but would collaborate with Plaintiff when it did become ready. Subsequently, Chicony became "ready" and incorporated Plaintiff's product into computers on a massive scale, including for one of the largest computer companies in the world, Acer; yet, Chicony never disclosed to Plaintiff that was "ready" to incorporate Plaintiff's product and, in fact, was doing so on a worldwide basis for Acer.

110.    Chicony failed to disclose that it claimed the right to manufacture, sell or otherwise make commercial use of electroluminescent keyboards with similar critical features to Plaintiff's product and compete with Plaintiff in the same product market that had been the subject of Plaintiff's extensive disclosures to Chicony.

111.    Chicony failed to disclose its belief that it was entitled to manufacture and/or sell, and did manufacture and/or sell, electroluminescent keyboards in competition with Plaintiff by making use of the information provided by Plaintiff, including its prototype and other information pertaining to the business plan surrounding its product line and its operation and functionality, all of which was confidential or otherwise valuable information disclosed solely to allow Chicony to evaluate a potential business opportunity with Plaintiff.

112.    Chicony either knew these representations or omissions or fact were false or made them recklessly without any knowledge of the truth, or Chicony was in a fiduciary or confidential relationship with Plaintiff and the representations tended to deceive Plaintiff, violate confidences, or cause injury to public interests, regardless of mental state.

113.    Regarding the foregoing facts not disclosed to Plaintiff, Chicony had a duty to disclose those facts because it was in a fiduciary or confidential relationship with Plaintiff, and/or because such Chicony's earlier representations misleading or untrue, because Chicony conveyed a false impression by making a partial disclosure, or because Chicony voluntarily disclosed information without disclosing the whole truth. By failing to disclose the facts, Chicony intended to induce Plaintiff to take some action or refrain from acting.

114.    Regarding the above-described omissions of fact, Chicony knew that Plaintiff was ignorant of those facts and did not have an equal opportunity to discovery them. The representations concerned Chicony's internal business decision-making and true intentions and objectives which Plaintiff depended on Chicony to disclose.  Chicony was deliberately silent when it had a duty to speak.

115.    Chicony's representations and omissions of fact induced Plaintiff's reliance, and Plaintiff suffered injury by justifiably relying on Chicony's representations and omissions of

fact, including by supplying Chicony with a critical information pertaining to its product, a keyboard prototype, its business plan surrounding its product and confidential information.

2.   Plaintiff pleads for all legal relief available, including but not limited to:

       o     Economic damages in the highest amount supportable under Texas law, whether as an expectation interest, a reliance interest, a restitution interest, or some combination thereof;

       o     Exemplary damages, which are proper given that there is evidence that Chicony engaged in fraudulent and/or malicious activity; and

       o     All equitable relief available, including but not limited to a constructive trust on all proceeds, funds, or property obtained as a result of Chicony's fraud.

### D.  UNJUST ENRICHMENT

116.   Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

117.    Chicony has been unjustly enriched: it has obtained benefits at Plaintiff's expense by the taking of undue advantage and fraud.

118.   Chicony has profited from its misuse of Plaintiff's proprietary information and technology.  Plaintiff seeks compensation and/or restitution through the equitable doctrine of unjust enrichment.

119.   Chicony was unjustly enriched by means of misappropriating Plaintiff's proprietary information and technology.  Unjust enrichment characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under certain circumstances.

120.    Chicony had access to Plaintiff's proprietary information and technology. Chicony misappropriated that knowledge and information of Plaintiff's proprietary information and technology.

121.    Chicony used and continues to use Plaintiff's proprietary information and technology in direct violation of its contractual obligation to Plaintiff.

122.    Allowing Chicony to keep profits it earned as a result of misappropriating the Plaintiff's proprietary information and technology offends all traditional notions of equity.

123.    In addition to monetary damages, Plaintiff seeks the imposition of constructive trust over the proprietary information and technology misappropriated by Chicony, including any products that incorporate Plaintiff's proprietary information or technology and all profits and benefits obtained therefrom.


## E. UNFAIR COMPETITION BY MISAPPROPRIATION

124.    Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

125.    Plaintiff created its keyboard product through extensive time, labor, skill and money.

126.    Chicony used the keyboard product in competition with Plaintiff, thereby free-riding on Plaintiff's efforts.

127.    Plaintiff has been commercially damaged as a result of Chicony's free-riding on its products.

128.    Plaintiff pleads for all legal relief available under the common law, including but not limited to:

o    Damages based on the value lost by Plaintiff or the value gained by Chicony, whether measured as lost profits, reasonable royalty, market value of Plaintiff's keyboard product, saved costs, or disgorgement of Chicony's profits, in the highest amount supportable under Texas law; and

o    Exemplary damages, which are proper given that there is evidence that Chicony engaged in fraudulent and/or malicious activity.

o    All equitable relief available under common law, including but not limited to preliminary and permanent injunctive relief prohibiting Chicony from any further importation, distribution, or sale of products that incorporate or make use of Plaintiff's proprietary information or product.

## VII.    JURY DEMAND

129.    Plaintiff hereby demands a trial by jury on all claims, issues and damages so triable.

## VIII.    NOTICE OF REQUIREMENT OF LITIGATION HOLD

130.    Chicony is hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Chicony knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

131.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Chicony's agents or employees if Chicony's electronically stored information resides there.

132.    Chicony is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Chicony's claims and/or defenses.  To avoid such a result, Chicony's preservation duties include, but are not limited to, the requirement that Chicony immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Chicony's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## VIII.   PRAYER

WHEREFORE, Plaintiff prays for the following relief:

(g)      that Defendants be summoned to appear and answer;

(h)      that the Court permanently enjoin Defendants and their officers, directors, servants, consultants, managers, employees, agents, attorneys, successors, assigns, affiliates, subsidiaries, and all persons or entities acting in concert or participation with any of them from further importation, manufacture, marketing, distribution, sale, or commercialization of any kind that incorporates the Plaintiff's proprietary information;

(i)      that the Court grant Plaintiff judgment against Defendants for

      (1)      all actual, consequential, special, punitive, exemplary, increased, and/or statutory damages;

      (2)      if necessary, an accounting of all damages;

      (3)      pre- and post-judgment interest as allowed by law; and

      (4)      reasonable attorney's fees, costs, and expenses incurred in this action; and

(j)      that the Court grant such further relief to which Plaintiff may show itself justly entitled.

Dated:  January 11, 2016          Respectfully submitted

**TAYLOR DUNHAM AND RODRIGUEZ LLP**
301 Congress Ave., Suite 1050
Austin, Texas  78701
512.473.2257 Telephone
512.478.4409 Facsimile

By:  _David E. Dunham_
      David E. Dunham
      State Bar No. 06227700
      Email:  ddunham@taylordunham.com
      Cabrach J. Connor
      State Bar No. 24036390
      Email:  cconnor@taylordunham.com
      Jennifer Tatum Lee
      State Bar No. 24046950
      Email: jtatum@taylordunham.com